No. 93,933

In the Matter of LISA ANN NATHANSON, a/k/a LISA ANN TARLOWE, *Respondent.*

112 P.3d 162

Opinion filed June 3, 2005.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

No appearance by the respondent.

*Per Curiam:* This is an original uncontested proceeding in discipline.

The formal complaint charged respondent, Lisa Ann Nathanson, a/k/a Lisa Ann Tarlowe, with violating the following Kansas Rules of Professional Conduct (KRPC): KRPC 3.1 (meritorious claims and contentions) (2004 Kan. Ct. R. Annot. 438), KRPC 3.3 (candor toward the tribunal) (2004 Kan. Ct. R. Annot. 444), KRPC 4.1 (truthfulness in statements to others) (2004 Kan. Ct. R. Annot. 460), KRPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) (2004 Kan. Ct. R. Annot. 485), and KRPC 8.4(d) (engaging in conduct prejudicial to administration of justice) (2004 Kan. Ct. R. Annot. 485). The hearing panel found clear and convincing evidence that Nathanson violated these rules.

The Disciplinary Administrator filed one formal complaint based on two cases, Nos. DA8528 and DA8580. The Disciplinary Administrator's office sent a copy of the formal complaint and notice of hearing to Nathanson's last registered mailing address by regular mail and by certified mail. The documents sent by certified mail were returned unsigned. Nathanson failed to appear at the December 16, 2004, disciplinary hearing.

"In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. [Citation omitted.] Any attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. [Citations omitted.]

"This court views the findings of fact, conclusions of law, and recommendations made by the disciplinary panel as advisory, but gives the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. Thus, the disciplinary panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence. [Citations omitted.]" *In re Lober*, 276 Kan. 633, 636-37, 78 P.3d 442 (2003).

The following summarizes the hearing panel's pertinent findings of fact:

Respondent Lisa Ann Nathanson is an attorney at law, Kansas Attorney Registration No. 10759. Her last registration address with the Clerk of the Appellate Courts of Kansas was in Kansas City, Missouri. Nathanson was admitted to the practice of law in Kansas on September 12, 1980. On October 20, 2000, this Court issued an order suspending Nathanson's Kansas license to practice law because of her failure to pay her 2000 annual continuing legal education fee. She failed to take appropriate steps to remedy the deficiency, and her license remains suspended.

At the time of her suspension, Nathanson was a staff attorney for the American Civil Liberties Union of Kansas and Western Missouri (ACLU). Despite her suspension, Nathanson remained in that capacity until March 26, 2002, when the ACLU terminated her employment.

While suspended, Nathanson practiced law in the courts of Kansas. On October 6, 2000, before her license was suspended, she filed a Motion of the Gender Public Advocacy Coalition and the American Civil Liberties Union of Kansas and Western Missouri for Leave to File Brief of *Amici Curiae* in Support of Plaintiff-Appellant with the Kansas Court of Appeals in *In re Gardiner*, 29 Kan. App. 2d 92, 22 P.3d 1086 (2001). Thereafter, on November 13, 2000, despite having her license suspended, Nathanson filed another motion in that case. Then, on September 26, 2001, she filed a brief in the Kansas Court of Appeals in *State v. Limon*, 32 Kan. App. 2d 369, 83 P.3d 229 (2004).

## DA8528

In November or December 2001, the office of the Honorable Catherine A. Walter, a United States Magistrate Judge for the Dis-

trict of Kansas, contacted Nathanson at her office at the ACLU and discussed the possibility of appointing her to represent Johnathan Bafford in a federal cause of action. Nathanson informed the court that she and Kevin Loeffler could be appointed to represent Bafford, that Loeffler was a volunteer ACLU attorney, and that Loeffler would be using the ACLU office in Kansas City, Missouri. Before appointing Nathanson, Judge Walter discovered Nathanson was not registered to practice in the United States District Court for the District of Kansas. As a result, the judge appointed Loeffler to represent Bafford on December 5, 2001. The court forwarded a copy of the order to the address provided by Nathanson, the ACLU's Kansas City, Missouri, office.

Despite what Nathanson had told the federal court, Loeffler had not volunteered to serve as an attorney for the ACLU in connection with the Bafford matter. On December 26, 2001, without Loeffler's knowledge or agreement, Nathanson filed a Request for Extension of Time to File Supplemental Response on Bafford's behalf. The motion appeared to be signed by Loeffler. However, Loeffler did not sign the pleading. Instead, Nathanson signed Loeffler's name without his knowledge.

On January 8, 2002, Bafford contacted the federal court and asked that new counsel be appointed for him because Loeffler had not yet contacted him. Loeffler had not contacted Bafford, because he remained unaware that he had been appointed.

On January 14, 2002, Nathanson filed Plaintiff's Supplemental Response to Defendant's Motion for Summary Judgment. The next day, Nathanson filed a Motion for Leave to File Corrected Pleading and Plaintiff's Corrected Supplemental Response to Defendants' Motion for Summary Judgment. The response, the motion, and the supplemental response appeared to have Loeffler's signature on them. However, Loeffler did not sign the pleadings. Nathanson, again, had signed Loeffler's name without his knowledge.

On January 29, 2002, Nathanson contacted Loeffler, asking him to appear by telephone at a conference and to inform the federal court that he would visit Bafford in prison. The telephone conference took place on January 30, 2002, and Loeffler explained to the

court and opposing counsel that he first learned of his appointment on January 29, 2002, that he had not signed any pleadings, and that Nathanson had prepared the pleadings and signed his name without his knowledge. The court subsequently issued an order permitting Loeffler to withdraw from the appointment.

On February 2, 2002, Nathanson wrote to Judge Walter. Her letter included the following paragraph:

"In the past, I was usually appointed as counsel along with the volunteer attorney, but now I act only as an administrative legal director for this ACLU, and I no longer practice law (this change was made due to this office's financial [in]ability to purchase professional liability insurance, as a result of which I will be leaving this position at the end of March and moving to Florida to practice psychology rather than law, and I still maintain my Missouri and Florida licenses to practice law, but not my Kansas license)."

In late February 2002, Judge Walter filed a complaint regarding Nathanson. On March 19, 2002, the Disciplinary Administrator wrote to Nathanson, notifying her that Judge Walter filed a complaint against her and directing her to file a written response to the initial complaint within 10 days. The next day, Nathanson faxed a letter to the Disciplinary Administrator. It appears that the same letter was also sent to the disciplinary authorities in Missouri and Florida. At that time, Nathanson was not aware that Judge Walter had filed a complaint. However, she provided her version of some of the relevant facts.

In her letter, despite what she told Judge Walter in her letter of February 2, 2002, Nathanson informed the disciplinary authorities that she took the District of Columbia bar examination and that she believed she had been admitted to the Missouri and Florida bars through reciprocity. Nathanson, however, was not a member of the District of Columbia bar. She also included the following in her letter:

"I have also been battling a malignant brain tumor for the past couple of years, and I have been on medical leave for a total of over 9 months during that period. And the fact that I began suffering some cognitive impairment from the tumor a couple of years ago, I would have had to make the hard decision to stop practicing law at about that time anyway.

"Now I am leaving the ACLU for good due to my illness. I have a couple more fund-raising appearances that I should be able to handle, but at the end of this

month my husband will be driving me to Charles W. Gerstenberg Hospice Center, 5300 East Avenue, West Palm Beach, Florida 33407."

David L. Wood, Special Investigator for the Disciplinary Administrator's office, attempted to contact respondent at the hospice center. Staff at the hospice center informed Wood that they did not have a patient by that name in their facility.

On April 4, 2002, Nathanson wrote to Carol Green, Clerk of the Kansas Appellate Courts. In her letter, Nathanson indicated that she wished to permanently surrender her license to practice law in Kansas. In that letter, Nathanson indicated that, as of April 13, 2002, her address would be Hospice Atlanta, 1244 Park Vista Drive, Atlanta, Georgia, 30319. At that time, respondent also indicated that she had changed her name to Lisa Tarlowe.

On April 15, 2002, Wood contacted Hospice Atlanta to determine whether Nathanson was a patient at the facility. The staff at the Hospice Atlanta informed him that no one with respondent's name had been a patient at the facility and no one with respondent's name had made application to be a patient at the hospice. Each time Wood has called the hospice looking for Nathanson, he has been told she has not been and is not a patient at the facility.

In May 2002, a "Mr. Simpson" received an electronic message, purportedly sent by Micah Gold. Micah Gold appeared to hold himself out as an attorney in Georgia. According to the message, Nathanson died on April 27, 2002, at Hospice Atlanta. Wood, again, contacted Hospice Atlanta. The staff again informed him that no one by respondent's name had been a patient at Hospice Atlanta and that no one by respondent's name died at the facility on April 27, 2002. Wood subsequently contacted the attorney registration authorities in Georgia and learned that no one by the name of Micah Gold was registered as an attorney in Georgia.

### DA8580

Beginning in June 2000, Nathanson rented an apartment from AMLI Management Company. At some point, she moved out of the apartment. A letter purporting to be from Loeffler writing on behalf of Nathanson was sent to the "Managing Agent," along with the door key and mailbox key. Loeffler did not write or send the

letter; nor did he give Nathanson authorization to write the letter in his name or to sign his name.

On February 28, 2002, L. Donald Huelson, attorney for AMLI Management Company, filed suit against Nathanson for monies owed under the apartment lease. Nathanson was served with the summons and petition at the ACLU of Kansas and Western Missouri on March 7, 2002.

An "Answer and Counterclaim" purportedly from Loeffler was filed on Nathanson's behalf. Loeffler had not agreed to represent Nathanson and had not prepared, signed, or filed the pleading. Instead, Nathanson prepared the answer and counterclaim, forged Loeffler's signature, and filed it. Nathanson falsely alleged the following:

"6. Moreover, while Defendant would not have pursued this cause of action against Plaintiff had this action not been filed against her, she hereby brings this counterclaim for injuries she suffered when she was raped in the apartment rented to her by Plaintiff on May 3, 2001, as a result of a security problem that she had reported to management and asked to have repaired two days earlier. Should this matter proceed to discovery, Defendant will produce a copy of the written complaint she filed with the apartment manager about the fact that the lock on her sliding glass door was broken. Defendant will also produce a copy of a work order slip she received in response. Defendant will also produce a copy of the police report that was filed in response to the attack upon her, and which verifies that the attacker entered through the unrepaired sliding glass door. Defendant seeks compensation for the contribution of Plaintiff's negligence to her injuries, in an amount to be determined later."

After receiving the answer and counterclaim, Huelson investigated the allegations contained in the counterclaim. He was unable to find any records or other evidence to substantiate any report of a security problem, any complaint regarding the sliding glass door, or any record of a rape being reported. In addition, no repair work order had been issued by AMLI. Huelson filed a response and answer and forwarded a copy to Loeffler. Loeffler then called Huelson and explained that he was not representing Nathanson. Loeffler requested and received from Huelson a copy of the letter and pleading that included his name and signature. After reviewing both, Loeffler wrote to Huelson and told him that he was not Nathanson's attorney and that he did not write, send, or review the

letter or pleading. This prompted Huelson to file a Motion to Strike Answer and Counterclaim and for Default Judgment, which the district court granted. The district court found that Loeffler did not sign the answer and counterclaim and that Nathanson failed to sign the pleading after being given notice of the motion to strike.

The hearing panel arrived at the following conclusions of law:

The Disciplinary Administrator complied with Supreme Court Rule 215 (2004 Kan. Ct. R. Annot. 292), which states that "[s]ervice upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail." Nathanson was afforded the required notice.

The formal complaint alleged that Nathanson violated KRPC 3.1, KRPC 3.3, KRPC 4.1, and KRPC 8.4.

KRPC 3.1 requires in pertinent part that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." 2004 Kan. Ct. R. Annot. 438. Nathanson violated KRPC 3.1 by filing a frivolous claim in the answer and counterclaim in the AMLI Management case and by filing a false counterclaim in that suit.

KRPC 3.3(a)(1) states that lawyers shall not "knowingly make a false statement of material fact or law to a tribunal." 2004 Kan. Ct. R. Annot. 444. Nathanson violated KRPC 3.3(a)(1) when she filed a false counterclaim in the AMLI Management case.

KRPC 4.1(a) states that in the course of representing a client "a lawyer shall not knowingly make a false statement of material fact or law to a third person." 2004 Kan. Ct. R. Annot. 460. Nathanson violated KRPC 4.1(a) by knowingly providing false statements of material fact to a third person when she filed a false counterclaim in the AMLI Management case, when she signed Loeffler's name to pleadings, and when she forwarded a letter to Huelson that appeared to be from Loeffler.

KRPC 8.4 states in pertinent part:

"It is professional misconduct for a lawyer to: . . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

[or] (d) engage in conduct that is prejudicial to the administration of justice." 2004 Kan. Ct. R. Annot. 485.

Nathanson repeatedly violated KRPC 8.4(c) when she prepared, fraudulently signed, and filed pleadings and correspondence that appeared to be from Loeffler. She violated KRPC 8.4(d) when she filed pleadings that purported to be prepared and filed by Loeffler when they were not. Because of Nathanson's misconduct, opposing counsel had to file additional paperwork, the federal court had to appoint another attorney to represent Bafford, and cases were delayed.

Regarding its recommended discipline, the panel considered the following factors based on the American Bar Association's Standards for Imposing Lawyer Sanctions (1991) (Standards):

"*Duty Violated*. The Respondent violated her duty to the legal profession to maintain personal integrity.

"*Mental State*. The Respondent knowingly violated her duty.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual damage to Mr. Bafford, to AMLI Management Company, and to the reputation of lawyers generally."

The panel found the following aggravating factors:

"Dishonest or Selfish Motive. Clearly, the Respondent's misconduct was motivated by dishonesty and selfishness. It was dishonest and selfish for the Respondent to repeatedly misrepresent the truth.

"A Pattern of Misconduct. The Respondent engaged in a pattern of misconduct by repeatedly preparing and signing pleadings using Mr. Loeffler's name. As such, the Hearing Panel concludes that the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 3.1, KRPC 3.3(a)(1), KRPC 4.1(a), KRPC 8.4(c) and KRPC 8.4(d). As such, the Respondent committed multiple offenses.

"Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process. The Respondent certainly engaged in other deceptive practices when she informed the Special Investigator for the Disciplinary Administrator's office and the Clerk of the Appellate Courts that she could be found at Hospice Atlanta.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1980. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of twenty years. Accordingly, the Hearing Panel concludes that the Respondent had

substantial experience in the practice of law at the time [she] engaged in the misconduct."

The panel considered as a mitigating circumstance the fact that Nathanson has not previously been disciplined.

The panel also considered Standard 6.11, which states:

"Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding."

The panel recommended disbarment and noted that in April 2002, in a letter to the Clerk of the Appellate Courts, Nathanson requested she be allowed to surrender her license to practice law. Nathanson's misconduct was established by substantial, clear, convincing, and satisfactory evidence.

We adopt and affirm the findings of fact made and the conclusions of law drawn by the hearing panel. Further, we agree with the panel's recommended discipline of disbarment.

IT IS THEREFORE ORDERED that Lisa Ann Nathanson a/k/a Lisa Ann Tarlowe be and she is hereby disbarred from the practice of law in the state of Kansas, that her privilege to practice law in the state of Kansas is revoked, and that the Clerk of the Appellate Courts of Kansas strike the name of Lisa Ann Nathanson a/k/a Lisa Ann Tarlowe from the roll of attorneys licensed to practice in the state of Kansas.

IT IS FURTHER ORDERED that this order shall be published in the official Kansas reports, that the costs herein be assessed to the respondent, and that the respondent forthwith comply with Supreme Court Rule 218 (2004 Kan. Ct. R. Annot. 301).

LOCKETT, J., Retired, assigned.